## HEYDEMANN et al. v. WESTINGHOUSE ELECTRIC & MANUFACTURING CO.

District Court, S. D. New York.

March 1, 1940.

Boskey, Schiller & Serling, of New York City (Keith Lorenz and Jerome H. Shapiro, both of New York City, of counsel), for plaintiffs.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Bruce Bromley and Joseph Day Lee, both of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This action is one in aid of execution upon a default judgment recovered by plaintiff Heydemann against Russian Electric Co. in 1929 in the sum of $130,372.32. By the present action, the plaintiff seeks to reach an alleged debt due Russian Electric Co. from the defendant in the amount of $78,545. A voluminous record has been made, and the matter has been briefed at great length by both sides. The basic facts, however, and the legal issues to which they give rise, can be isolated without great difficulty.

From early in the year 1914 to and including the month of October, 1917, the defendant acted as disbursing agent in the United States for Russian Electric Co.

From October 31, 1917, until March, 1920, there were no transactions between the two corporations. On March 26, 1920, National City Bank of New York wrote to the defendant at its offices in Pittsburgh, Pennsylvania, advising that, pursuant to the request of a Russian bank under date of December 26, 1917, they were forwarding to the defendant for the account of Russian Electric Co. the sum of $78,545. No instructions were given in the letter. The letter further advised that the delay in forwarding the money had been occasioned by the fact that funds of the Russian bank had not been available until this time.

The defendant lacked definite information as to the exact purpose of this deposit until March 29, 1920, when a letter of one P. Guercken to a Westinghouse subsidiary was forwarded to the defendant. The exact relationship of Guercken to the situation at this time is not altogether clear, but his letter did state that the funds were to be held for the account of Russian Electric Co. subject to the order of one Paul Olgin.

Mr. Olgin was well known to the defendant either as a director or one of the four managing directors of Russian Electric Co., it being the practice of directors of Russian corporations to perform the functions usually performed by officers of American corporations. It was reasonable, therefore, to assume that he would be given the power of withdrawal.

Thereafter a broad power of attorney in favor of Olgin, signed by two other directors of Russian Electric Co., was presented to the defendant and certain orders for the disposition of the money were made by Olgin. Some of these orders called for payment to his own account or the account of Guercken or others. Still other orders directed payment to such unquestionably legitimate payees as the account of Russian Electric Co. with its London bank. Plaintiff proceeds upon the theory that all of these payments were improper and that they did not discharge the obligation of the defendant to Russian Electric Co.

In essence, plaintiff's case is based upon a charge of conspiracy of the surviving directors of Russian Electric Co. to convert its assets to their own use, and that the defendant was negligent in not detecting the alleged misappropriations, if any. The difficulty, however, with this theory is the fact that the record fails to establish that even if any improprieties took place,

which in itself is doubtful, there was any reason for the defendant to have been put on notice thereof.

Cutting across nonessentials, we find the defendant paying out against the order of one whom they knew from past dealings to be a person of authority for Russian Electric Co. These payments were made pursuant to a broad power of attorney in his favor, which, though not executed with such formalities as would make it self-proving within the United States, was nevertheless executed by persons in authority according to Russian law.

■ In an attempt to negative the apparent authority of Olgin plaintiff points to conditions prevalent in Russia at the time, particularly with respect to the revolution and the seizure of private property by the Bolshevists. The record, however, indicates that during 1920 there were still branches of Russian Electric Co. in operation and there is nothing to indicate that Russian Electric Co. had wholly ceased to function, or that if it had, its managing directors were without authority to administer its remaining assets though other assets may have been confiscated.

Moreover, if plaintiff's contention on this point be accepted, it creates a further difficulty for plaintiff. In support of her position that the alleged debt in question, though of a Pennsylvania corporation to a Russian corporation, was attachable in New York, plaintiff makes the transaction in question part of a prior course of dealing between the parties whereby the practice was to make disbursements for Russian Electric Co. from the New York office of defendant. If conditions in Russia were such as to put the defendant on notice of the lack of authority of the Russian directors, such conditions would also negative the possibility of the $78,545 transaction being properly regarded as part of a prior course of dealing between the parties. Under the circumstances therefor the alleged debt in question would have no New York contact which might make it the subject of attachment in New York. Since this attachment is the basis of the present action, the whole action would fall.

Although plaintiff's attorneys devote a very extended portion of their brief to a discussion and analysis of circumstances which should have allegedly aroused the suspicions of the defendant, a consideration of the whole record hardly establishes that it is reasonable to conclude that such suspicions should have been aroused. It would serve no useful purpose to proceed through this evidence bit by bit. Suffice it to say that there is insufficient evidence to establish actual misappropriation, and if there was misappropriation, that the defendant should be regarded as on notice of it so as to make it liable to pay out the sum of $78,545 once again.

Defendant has raised other defenses which relate, among other things, to the validity of the attachment proceedings. Under the circumstances, it is not necessary to discuss these defenses. One defense, however, namely that of the statute of limitations, is deserving of comment.

■ In view of the questionable position of Guercken, it is difficult to see how his aforementioned letter to the defendant wherein he said that the monies were to be paid out against the special demand of Olgin can be treated as part of the terms of deposit. Thus upon deposit of the monies there arose the usual immediate obligation to repay to which a six-year statute would be applicable. The present suit would thus be barred whether the New York or Pennsylvania law be applied. To escape the statute by bringing the case within the "special demand" provision of Section 15 (2) of the New York Civil Practice Act, would require that the authority on Guercken's part to write the letter in question be established. This, as pointed out above, has been done with no degree of certainty.

Judgment for defendant.